# United States District Court
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| MYISHA NITER, on Behalf of Minor Children CHANCE WILLIAMS, CHRISTINA WILLIAMS, and CHRISTIAN WILLIAMS, the Children of CHRISTOPHER DARNELL WILLIAMS (DECEDENT), and GEORGE WILLIAMS, Individually as Father of CHRISTOPHER DARNELL WILLIAMS (DECEDENT) | § § § § § § § § § § | |
| v. | § § | CIVIL ACTION NO. 3:23-CV-1621-S |
| MARIAN BROWN, In Her Individual and Official Capacity as Sheriff of Dallas County, TEXAS DEPARTMENT OF PUBLIC SAFETY, DOES In Their Individual and Official Capacity as Agents/Employees of Dallas County Sheriff's Office, and DALLAS COUNTY | § § § § § § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Texas Department of Public Safety's ("DPS") Renewed Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(5) ("DPS Service Motion") [ECF No. 19], Defendant Dallas County's Motion to Dismiss ("County Motion") [ECF No. 21], Defendant Dallas County Sheriff Marian Brown's Rule 12(b)(6) Motion to Dismiss ("Brown Motion") [ECF No. 22], and DPS's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) ("DPS Immunity Motion") [ECF No. 24]. The Court has reviewed the Motions, Plaintiffs' Response to the County Motion ("County Response") [ECF No. 25], Plaintiffs' Response to the Brown Motion ("Brown Response") [ECF No. 26], Dallas County's Reply to the County Response [ECF No. 29], Brown's Reply to the Brown Response [ECF No. 30], and the applicable law. For

the following reasons, the Court **DENIES** the DPS Service Motion and **GRANTS** the County
Motion, Brown Motion, and DPS Immunity Motion.

## I. BACKGROUND

Christopher Williams ("Decedent") was arrested by the Dallas Police Department on or
about July 14, 2021. First Am. Compl. ("Amended Complaint") [ECF No. 17] ¶ 1. Plaintiffs
Myisha Niter on Behalf of Minor Children Chance Williams, Christina Williams, and Christian
Williams, the Children of Decedent, and George Williams, Individually as Father of Decedent
("Plaintiffs") allege that Decedent was booked into the Dallas County Jail and placed on suicide
watch in the West Tower, a mental behavior observation unit. *Id.* ¶¶ 1-2. Decedent was then moved
to the North Tower, which is a general population unit, on July 18, 2021, where he was attacked
by inmates on July 20. *Id.* ¶¶ 3, 4, 17. Plaintiffs allege that after being attacked, Decedent was
placed alone in a holding cell to await a new holding unit. *Id.* ¶¶ 5, 7. According to Plaintiffs,
Decedent was not observed by jail staff at least every thirty minutes in his holding cell as is
required by state regulations. *Id.* ¶¶ 12-13, 28, 35. Plaintiffs allege that on July 20, Decedent was
discovered in his holding cell hanging by a blanket. *Id.* ¶ 6. Decedent was transported to Parkland
Memorial Hospital where he was pronounced dead on or about July 22, 2021. *Id.* ¶¶ 8, 10.

Based on the foregoing, Plaintiffs assert fifteen causes of action against Brown, "Does"
("Doe Defendants"), Dallas County, and DPS. *Id.* at 2-3. Brown, Dallas County, and DPS move
to dismiss each claim against them.

## II. LEGAL STANDARDS

### *A. Rule 12(b)(1)*

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by
statute, lack the power to adjudicate claims." *La. Real Est. Appraisers Bd. v. Fed. Trade Comm'n*,
917 F.3d 389, 391 (5th Cir. 2019) (quoting *Texas v. Travis County*, 910 F.3d 809, 811 (5th Cir.

2

2018)). Courts "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). When a defendant has sovereign immunity under the Eleventh Amendment for a claim, federal courts lack subject-matter jurisdiction over that claim. *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 769 (5th Cir. 2015) (citation omitted).

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may challenge the subject matter jurisdiction of the district court to hear a case. The district court may dismiss for lack of subject matter jurisdiction based on the complaint alone. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The court must accept all factual allegations in the complaint as true. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001) (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)). If the court determines that it lacks subject matter jurisdiction, it must dismiss the action. FED. R. CIV. P. 12(h)(3). If the court dismisses claims over which it has original jurisdiction, it has the discretion to dismiss any remaining state claims by declining to exercise supplemental jurisdiction. *St. Germain v. Howard*, 556 F.3d 261, 263-64 (5th Cir. 2009) (citing 28 U.S.C. § 1367(c)).

### *B. Rule 12(b)(5)*

In the absence of proper service of process, a court cannot exercise personal jurisdiction over a defendant. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) (citations omitted); *Norris v. Causey*, 869 F.3d 360, 368 (5th Cir. 2017) (citation omitted). Federal Rule of Civil Procedure 12(b)(5) provides that a party may file a motion to dismiss for insufficient service of process. Once such a motion has been filed, the party serving process has the burden of

Case 3:23-cv-01621-S   Document 33   Filed 09/25/24   Page 4 of 24   PageID 321

establishing its validity. *See Quinn v. Miller*, 470 F. App'x 321, 323 (5th Cir. 2012) (citing *Carimi v. Royal Caribbean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992)).

### C. Rule 12(b)(6)

To defeat a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

### III. ANALYSIS

DPS seeks dismissal for insufficient service and sovereign immunity under Federal Rules of Civil Procedure 12(b)(5) and 12(b)(1), respectively. Dallas County and Brown request that the Court dismiss Plaintiffs' survival claims due to Niter lacking capacity to sue, and the remaining claims for failure to state a claim upon which relief can be granted under Rule 12(b)(6). Because the legal basis for Plaintiffs' claims is unclear, the Court begins by identifying the legal basis for Plaintiffs' claims before turning to Defendants' arguments.

### A. Plaintiffs' Claims

As to Brown, Plaintiffs bring a 42 U.S.C. § 1983 claim, a survival claim under Section 1983 and Texas Civil Practice and Remedies Code § 71.021, and a wrongful death claim under Section 1983 and Texas Civil Practice and Remedies Code § 71.002-004 for a survival action and wrongful death action, respectively (Counts I, II, III).[1] Am. Compl. ¶¶ 44-70. Plaintiffs raise the same three claims against the Doe Defendants individually and as agents and/or employees of Dallas County (Counts IV, V, VI). *Id.* ¶¶ 71-107. Next, Plaintiffs bring survival and wrongful death claims against Dallas County based on "[i]nstitutional [l]iability," as well as survival and wrongful death claims based on vicarious liability for Brown's and the Doe Defendants' actions (Counts VII, VIII, IX, X). *Id.* ¶¶ 108-75. Again, Plaintiffs cite both Section 1983 and the Texas Civil Practice and Remedies Code. *Id.* Against DPS, Plaintiffs bring assert the same four claims as against Dallas County (Counts XI, XII, XIII, XIV). *Id.* ¶¶ 176-217. Plaintiffs also bring a claim against DPS[2] under The Sandra Bland Act, Texas Code of Criminal Procedure art. 16.22 (Count XV). *Id.* ¶¶ 218-28.

The Court interprets all of Plaintiffs' claims as federal claims arising under Section 1983 for two reasons. First, each count cites to Section 1983. "Whether a claim arises under federal law is a question determined by reference to the plaintiff's 'well-pleaded complaint.'" *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 543 (5th Cir. 2005) (citation omitted). All fifteen counts allege that the respective Defendant's action deprived Decedent of his "rights, privileges, and immunities secured by the U.S. Constitution and 42 U.S.C. § 1983." Am. Compl. ¶¶ 51, 56,

---

[1] Count III mistakenly cites to Section 71.021. *See* Am. Compl. ¶ 70.

[2] Count XV does not reference DPS in its header. *Compare* Am. Compl. 46 *with id.* at 38, 40, 41, 43. However, Count XV clarifies that it is directed at DPS. *See id.* ¶ 227 ("As a direct and proximate result of the foregoing conduct, [DPS deprived Decedent] of his rights and privileges as a citizen of the United States . . . ."). Also, the Amended Complaint mistakenly lists Count XV as Count XIV. *See id.* at 46.

64, 72, 85, 97, 110, 127, 144, 161, 178, 189, 198, 209, 220. Indeed, this interpretation is corroborated by Plaintiffs' own Responses, where they maintain that "Plaintiffs have properly brought constitutional claim[s] pursuant to § 1983 on behalf of themselves and Decedent's heirs." County Resp. 5; Brown Resp. 5.

Second, the remedies Plaintiffs seek through their survival and wrongful death claims are incorporated into their Section 1983 claims. "The Fifth Circuit has held that 42 U.S.C. § 1988 incorporates state law wrongful death and survival remedies under § 1983, thus allowing the surviving relatives of an individual killed as a result of a § 1983 violation to recover for their own injuries arising out of the wrongful death." *Borum v. Swisher County*, No. 2:14-CV-127-J, 2014 WL 4814541, at *11 (N.D. Tex. Sept. 29, 2014) (citing *Rhyne v. Henderson County*, 973 F.2d 386, 390-91 (5th Cir.1992)); *see also Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 208-09 & n.10 (5th Cir. 2016) (explaining that Section 1988 incorporates Texas's wrongful death and survival statues (citations omitted)). Therefore, Plaintiffs' "wrongful death and survival remedies arise from § 1983 rather than from state law." *Borum*, 2014 WL 4814541, at *11 (citation omitted). The Court thus interprets all of Plaintiffs' claims as federal claims arising under Section 1983.

### B. DPS's Motions

DPS asserts two bases for dismissal. First, the DPS Service Motion requests dismissal for insufficient service of process. Second, the DPS Immunity Motion contends that DPS has sovereign immunity from Plaintiffs' suit.

### i. Insufficient Service

DPS asks the Court to dismiss the claims against it under Rule 12(b)(5) because of insufficient service of process. DPS Serv. Mot. 2-3. DPS argues that Plaintiffs "requested that summons be sent to the 'Office of the Inspector General' rather than to DPS's only authorized

agent, Director McCraw." *Id.* at 3. DPS acknowledges that serving the Office of General Counsel would have been appropriate. *Id.* at 2. While Plaintiffs did not file a response to the DPS Service Motion, they subsequently filed an Affidavit of Service showing that DPS was served on November 3, 2023, through a DPS Assistant General Counsel. *See* Aff. of Service [ECF No. 23] 1. DPS later acknowledged that "DPS was properly served on November 3, 2023." DPS Immunity Mot. 2. Considering Plaintiffs' Affidavit of Service and DPS's acknowledgment of proper service, the DPS Service Motion is denied.

### ii. Sovereign Immunity

DPS contends that as a state agency, it is shielded from suits for money damages by the Eleventh Amendment. DPS Immunity Mot. 2-3. Plaintiffs did not respond to the DPS Immunity Motion.[3] Based on a review of the Amended Complaint and the applicable law, the Court finds that DPS is entitled to sovereign immunity.

"'Eleventh Amendment sovereign immunity bars private suits against nonconsenting states in federal court' in most cases." *Richardson v. Texas*, No. 23-40526, 2024 WL 913380, at *3 (5th Cir. Mar. 4, 2024) (quoting *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019)), *cert. denied*, 144 S. Ct. 2689 (2024). This protection extends to suits against state officials or agencies that are "effectively suits against the state." *Id.* (citing *City of Austin*, 943 F.3d at 997). State agencies enjoy sovereign immunity unless Congress abrogates it or the state waives it. *Id.* (citation omitted). An exception to sovereign immunity exists where a state official violates federal law. *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013) (citing *Ex parte Young*, 209 U.S. 123, 155-56 (1908)). The *Ex parte Young* exception applies only where the suit seeks injunctive or declaratory relief against individual state officials. *Id.* (citing *Ex parte Young*, 209 U.S. at 155-56).

---

[3] A failure to brief an issue is not dispositive as "Rule 12 does not by its terms require an opposition." *Walker v. Stroman*, No. 20-50602, 2022 WL 2073834, at *3 (5th Cir. June 9, 2022) (citation omitted).

Texas, and by extension DPS, has not waived sovereign immunity. *See Cleveland v. Liberty Cnty. Sheriff's Dep't*, 626 F. App'x 540, 542 (5th Cir. 2015) ("The Texas Department of Public Safety is an agency or department of Texas, and Texas has not waived its sovereign immunity. Thus, the Eleventh Amendment shields the department from suit in federal court." (citation omitted)). "Nor has Congress expressly waived sovereign immunity for § 1983 suits." *Lewis v. Univ. of Tex. Med. Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011) (citing *Quern v. Jordan*, 440 U.S. 332, 340-45 (1979)).

Because sovereign immunity has not been waived, for Plaintiffs' claims to survive the *Ex parte Young* exception must apply. For two reasons, it does not. First, *Ex parte Young* requires a plaintiff to "name individual state officials as defendants in their official capacities." *Raj*, 724 F.3d at 328 (citing *Kentucky v. Graham*, 473 U.S. 159, 169 n.18 (1985)). Plaintiffs' claims against DPS impermissibly target the organization itself. *See id.* (explaining that the plaintiff could not overcome sovereign immunity because he had named the organizations as the defendants).

Second, the *Ex parte Young* exception is reserved for "ongoing violations of federal law" that can be addressed through injunctive or declaratory relief. *Cleveland*, 626 F. App'x at 542 (citations omitted). "To the extent that money damages are sought, however, *Ex parte Young* is inapplicable and the Eleventh Amendment constitutes a bar to suit." *Darlak v. Bobear*, 814 F.2d 1055, 1061 n.7 (5th Cir. 1987). Here, the violations Plaintiffs base their claims upon each happened in the past, either before or on the day Decedent was found hanging in his cell. *See* Am. Compl. ¶¶ 11-43, 176-228. *Ex parte Young* "does not permit judgments against state officers declaring that they violated federal law in the past." *Calhoun v. Collier*, 78 F.4th 846, 851 (5th Cir. 2023) (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)). Further, Plaintiffs seek only monetary damages and do not request injunctive or declaratory relief. *See* Am.

Compl. 48-50 (asking for "[c]ompensatory, special, and punitive damages" as well as attorney's fees and interest).

In sum, DPS is entitled to sovereign immunity. Because Plaintiffs seek only monetary damages and do not seek injunctive or declaratory relief related to an ongoing violation of federal law, there is no exception to DPS's sovereign immunity. Therefore, the Court dismisses Counts XI, XII, XIII, XIV, and XV. No claims remain against DPS.

### C. Dallas County's Motion

Dallas County raises three grounds in favor of dismissal. First, Niter lacks the capacity to bring survival-based claims. Second, Plaintiffs have not sufficiently pleaded municipal liability. Third, Dallas County is immune from vicarious liability.[4]

#### i. Capacity

Dallas County argues that Counts VII, and IX should be dismissed because Niter—who is the sole Plaintiff raising those claims in a representative capacity, Am. Compl. ¶¶ 62, 124, 158— lacks the capacity to make survival claims. See County Mot. 3-6. Plaintiffs respond that Decedent's children are within the class of people Texas recognizes as entitled to recover survival claims. Brown Resp. 8-9.[5] The Court finds that Niter has capacity to advance the survival claims.

A party to a lawsuit must have the capacity to sue or be sued. See FED. R. CIV. P. 17(b). "[W]hen an individual is acting in a representative capacity, their capacity to sue shall be determined by the law of the state in which the district court is held." Rice ex rel. CIR v. Cornerstone Hosp. of W. Monroe, L.L.C., 589 F. App'x 688, 690 (5th Cir. 2014) (citation omitted);

---

[4] In the alternative, Dallas County moves to dismiss Plaintiffs' state law claims under Rule 12(b)(1) and/or Rule 12(b)(6). See County Mot. 19-23. Because the Court finds in Dallas County's favor on its principal bases for dismissal, it does not address these alternative grounds.

[5] Plaintiffs only respond to the capacity argument in the Brown Response. Therefore, for the sake of thoroughness, the Court analyzes that response in connection with Dallas County's arguments.

*see also* FED. R. CIV. P. 17(b)(3). In Texas, "a party has *capacity* when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy." *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848-49 (Tex. 2005) (citation omitted). Texas considers minors, incompetents, and estates as lacking the legal authority to sue, and thus another party must have the capacity to sue on their behalf. *Id.* at 849 (citations omitted). If the party who initiates the suit lacks capacity, dismissal is warranted under Rule 12(b)(6) "given that a court cannot grant relief to a party lacking capacity to sue." *Texas v. Ysleta del Sur Pueblo*, 79 F. Supp. 2d 708, 712 (W.D. Tex. 1999), *aff'd sub nom. State v. Ysleta del Sur*, 237 F.3d 631 (5th Cir. 2000) (citation omitted).

The Court begins by clarifying the bases upon which Niter brings the survival-based claims. The Amended Complaint alleges that:

> The claims and causes of action for injuries to the health, reputation, and person sustained by the Decedent are brought in this action by **MYISHA NITER** as mother of Decedent's minor children **CHANCE WILLIAMS, CHRISTINA WILLIAMS, and CHRISTIAN WILLIAMS**, and personal representative of Decedent's estate, pursuant to the Survival Act, Texas Civil Practice and Remedies Code section 71.021.

Am. Compl. ¶¶ 62, 124, 158. Dallas County only challenges Niter's capacity as personal representative of Decedent's estate. *See* County Mot. 3-5. As to Niter suing as the mother of Decedent's minor children, Dallas County states that the allegation is "far from clear." *Id.* at 6. The Court disagrees.

In Texas, survival claims may be brought by heirs, legal representatives, or the estate of the deceased. TEX. CIV. PRAC. & REM. CODE ANN. § 71.021(b). The Texas Estates Code defines heir as "a person who is entitled under the statutes of descent and distribution to a part of the estate of a decedent who dies intestate." TEX. EST. Code § 22.015. When a person dies intestate and without a spouse, their living children are their heirs. *Dukes v. Strand*, No. 3:15-CV-3600-BT, 2019 WL 2567687, at *3 (N.D. Tex. June 21, 2019) (citing TEX. EST. CODE ANN. § 201.001(a)-

(b)). Plaintiffs allege that Decedent died intestate and unmarried and was survived by his minor children. Am. Compl. 2. Drawing all reasonable inferences in Plaintiffs' favor as it must, the Court finds that Niter alleges two bases for the survival claims—as mother of Decedent's heirs and as a representative of Decedent's estate—each of which are permitted by Section 71.021. Next, the Court considers whether Niter has adequately alleged that she has capacity to sue in either role.

Niter lacks capacity to assert survival claims as a representative of Decedent's estate. "In general, only the estate's personal representative has the capacity to bring a survival claim." *Austin Nursing Ctr.*, 171 S.W.3d at 850 (citation omitted). An estate's personal representative include executors, administrators, and successors to executors or administrators. TEX. EST. CODE ANN. § 22.031(a). Plaintiffs do not allege any facts showing that Niter is an executor, administrator, or successor of Decedent's estate, and the conclusory statement that she is a personal representative is insufficient. *See Sims v. Dall. Indep. Sch. Dist.*, No. 3:23-CV-00010-N, 2024 WL 495259, at *4 (N.D. Tex. Feb. 7, 2024) ("Conclusory allegations, without facts to support them, are not accepted as true for the purposes of deciding a motion to dismiss." (citing *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007))). However, "under certain circumstances heirs may be entitled to sue on behalf of the decedent's estate." *Austin Nursing Ctr.*, 171 S.W.3d at 850 (citation omitted). One such circumstance is where "there is no administration upon the estate . . . and the facts show that none is necessary or desired by those interested in [the] estate . . . and the heirs are in possession of [the decedent's] property." *Lovato v. Austin Nursing Ctr., Inc.*, 113 S.W.3d 45, 52 (Tex. App.—Austin 2003, pet. granted) (alterations in original) (citation omitted), *aff'd*, 171 S.W.3d 845 (Tex. 2005). While Plaintiffs allege that Decedent died "intestate without the necessity of an administration," Am. Compl. 2., there are no factual allegations regarding the possession of

Decedent's property. Therefore, Plaintiffs do not sufficiently allege that Niter or her children have the capacity to bring suit as representatives of Decedent's estate.

Niter does have the capacity to raise the survival claims as the mother of Decedent's children, however. Section 71.021 expressly permits heirs to litigate a survival claim. The question, then, is whether Niter has the capacity to sue on the children's behalf. She does. Plaintiffs allege that Niter is the children's mother. Am. Compl. 2. "Under Texas law, a mother is an appropriate legal representative for her child." *Adkison v. Polaris Indus., Inc.*, No. 3:18-CV-02014-M, 2020 WL 137226, at *3 (N.D. Tex. Jan. 13, 2020) (citing TEX. FAM. CODE ANN. § 151.001(a)(7)); *see also In re Bridgestone Ams. Tire Operations, LLC*, 459 S.W.3d 565, 572 n.9 (Tex. 2015) ("Under Texas law, a parent has the right to represent his child in legal proceedings[.]" (citing TEX. FAM. CODE ANN. § 151.001(a)(4), (7))). Therefore, Niter has the capacity to bring the survival claims as the representative of Decedent's heirs.

### ii. Municipal Liability

Dallas County next argues that Counts VII and VIII—regarding Dallas County's municipal liability for Decedent's death—should be dismissed under Rule 12(b)(6) because Plaintiffs have not sufficiently pleaded the elements outlined in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). County Mot. 6-17. Plaintiffs respond that their allegations meet the plausibility threshold. County Resp. 4-8. The Court finds that Plaintiffs have not sufficiently pleaded municipal liability.

"Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (citation omitted). To state a claim under Section 1983, a plaintiff must allege facts showing (1) a deprivation of a right secured by the

Constitution and the laws of the United States; and (2) that the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005) (citation omitted). "Claims under § 1983 may be brought against persons in their individual or official capacity, or against a governmental entity." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (citation omitted).

"[I]solated unconstitutional actions by municipal employees will almost never trigger [municipal] liability." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citation omitted). As such, "a local government may not be sued under § 1983 for an injury inflicted solely by its employee or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. "The Fifth Circuit interprets *Monell* as requiring a plaintiff to identify '(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom).'" *Allen v. Hays*, 65 F.4th 736, 749 (5th Cir. 2023) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)). To survive a motion to dismiss, the plaintiff must "plead facts that plausibly support each element of § 1983 municipal liability." *Covington v. City of Madisonville*, 812 F. App'x 219, 224 (5th Cir. 2020) (citation omitted). The Court takes each element in turn.

### a. Official Policy or Custom

A plaintiff may establish an official policy in one of three ways. First, a plaintiff may allege the existence of "a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by . . . an official to whom the lawmakers have designated policy-making authority." *Allen*, 65 F.4th at 749 (alteration in original) (citation omitted). Second, a plaintiff may allege a "persistent, widespread practice." *Id.* (citation omitted). Last, in "rare circumstances" a

single, unconstitutional act may be sufficient if "undertaken by the municipal official or entity possessing 'final policymaking authority' for the action in question." *Howell v. Town of Ball*, 827 F.3d 515, 527 (5th Cir. 2016) (citation omitted). The plaintiff must specifically identify "each and any policy which allegedly caused constitutional violations." *Piotrowski*, 237 F.3d at 579. The pleadings must also contain specific facts describing the policy or custom and its relationship to the underlying constitutional violation. *York v. Welch*, No. 20-40580, 2024 WL 775179, at *3 (5th Cir. Feb. 26, 2024) (citation omitted).

Plaintiffs do not allege facts to support the first two types of official policies.[6] Plaintiffs do not identify an overt policy that led to Decedent's death. Plaintiffs cite to Texas Administrative Code Title 37, Part 9, to identify the policies regarding inmates with mental health concerns that Dallas County did not follow. *See* Am. Compl. ¶¶ 11-16, 19, 28. However, these policies cannot form the basis of municipal liability because Plaintiffs' position is that Defendants did not follow these policies, not that following the policies led to Decedent's death. *See Howell*, 827 F.3d at 527 ("Under *Monell*, municipal liability for constitutional torts arises when the *execution* of an official policy causes the plaintiff's injury." (emphasis added) (citing *Monell*, 436 U.S. at 694)). Nor do Plaintiffs allege a persistent, widespread practice. Plaintiffs' allegations focus on the acts and omissions of officials on or about July 14, 2021, to July 20, 2021, in relation to a single inmate. *See* Am. Compl. ¶¶ 11-22, 112-20, 129-37. There are no allegations of this practice happening with respect to other inmates or with respect to Decedent over a prolonged period. In other words, Plaintiffs do not allege any specific facts regarding a "persistent, widespread practice of [Dallas County], which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy."

---

[6] Plaintiffs' wholly conclusory allegations that Defendants made official acts, policies, or plans, *see, e.g.*, Am. Compl. ¶¶ 25, 40, are insufficient. *See Sims*, 2024 WL 495259, at *4.

*Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)).

Plaintiffs, then, must rely on the rare circumstance where a single act constitutes an official policy. For an act to constitute official policy, it must be done by a decisionmaker who has "final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). Plaintiffs allege that Dallas County was aware of state regulations on the proper management of inmates with mental health concerns and deliberately did not follow them. Am. Compl ¶¶ 29, 35, 112-14, 129-31. The decision to move an inmate on suicide watch to general population and then failing to monitor him after his assault, according to Plaintiffs, constituted an official policy because it was made by "the supervisor and staff" of the Dallas County Jail, who, according to Plaintiffs, are "the authorized decision makers."[7] County Resp. 6. However, a decision from an authorized decision maker is not sufficient to qualify as an official policy under this standard; the decision must come from a final policymaker. "[I]n Texas, the sheriff is without question the county's final policymaker in the area of law enforcement." *Jackson v. Ford*, 544 F. App'x 268, 272 (5th Cir. 2013) (cleaned up) (citations omitted); TEX. LOC. GOV'T CODE ANN. § 351.041 ("The sheriff of each county is the keeper of the county jail . . . [and] shall continue to exercise supervision and control over the jail."). Therefore, for this single decision not to follow state regulations to qualify as an official policy, the sheriff, Brown, must have made the decision.

---

[7] Plaintiffs also reference inadequate training. *See* Am. Compl. ¶¶ 112, 129. To the extent that Plaintiffs are raising failure to train claims, they cannot succeed under the first two types of official policies because they have no non-conclusory allegations regarding an official training policy or widespread custom, and they cannot succeed under the single-incident exception because Plaintiffs do not allege that there was "no training whatsoever." *Hutcheson v. Dallas County*, 994 F.3d 477, 483 (5th Cir. 2021) (citation omitted).

Plaintiffs do not allege specific facts showing that Brown decided to violate state regulations as to Decedent's handling in jail. *See Pembaur*, 475 U.S. at 483-84 (requiring that the final policymaker make a "deliberate choice to follow a course of action"). Plaintiffs blame both the Doe Defendants and unnamed "personnel, agents, and employees of Dallas County and Dallas County Jail" for the decision to deliberately ignore state policy. Am. Compl. ¶¶ 28-30, 32; *see also* County. Resp. 6. Plaintiffs' decision to place the decision making at the feet of officials other than the final policymaker is dispositive.

In sum, Plaintiffs have not sufficiently pleaded the existence of an official policy because they do not allege the existence of an express policy, a widespread practice or custom, or any specific facts demonstrating that Brown—the person with final policymaking authority as to Decedent's care while in jail—performed a single act constituting official policy.[8] "Because there is no official policy, there can be no liability." *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 347 (5th Cir. 2017).

### b. Policymaker

For the second element, Plaintiffs must "identify a municipal policymaker who could be held responsible, through actual or constructive knowledge, for enforcing [the] policy that caused [Decedent's] injuries." *Piotrowski*, 237 F.3d at 578-79. As discussed above, the relevant municipal policymaker is Brown. Yet Plaintiffs do not allege that she had actual or constructive knowledge of the decisions being made regarding Decedent. According to Plaintiffs, it was the actions of the personnel and officers at Dallas County Jail between July 14 and July 20, 2021, that led to Decedent's death. *See* Am. Compl. ¶¶ 12-22, 29, 32. Plaintiffs do not allege that during those seven days Brown had any knowledge of what prison staff were doing with Decedent, let alone that she

---

[8] A subordinates' act may become official policy if ratified by the final policymaker. *Howell*, 827 F.3d at 528. However, Plaintiffs allege no specific facts to support a ratification claim.

issued any directives related to Decedent. Therefore, Plaintiffs do not sufficiently plead the identity of a municipal policymaker with actual or constructive knowledge.

### c. Moving Force of the Violation

The last element under *Monell* is that the official policy is the moving force behind the alleged constitutional violation. To satisfy this element, Plaintiffs must allege both a causal link between the policy and the alleged violation and Dallas County's deliberate indifference to Decedent's rights. *Piotrowski*, 237 F.3d at 580 (citations omitted). Plaintiffs did not brief the causation issue. The Court determines that Plaintiffs pleadings are insufficient to satisfy the third element.

To begin, for there to be a moving force behind a constitutional violation, there must first be a constitutional violation. Yet the constitutional basis for each Section 1983 claim Plaintiffs raise is not clearly alleged. "Litigants must allege constitutional violations with 'factual detail and particularity.'" *Silvercreek Mgmt., Inc. v. Banc of Am. Sec., LLC*, 534 F.3d 469, 473 (5th Cir. 2008) (citation omitted). In the facts common to all counts, Plaintiffs allege that each Defendant deprived Decedent of his constitutional right under the Fourth Amendment "to be free from excessive and unreasonable force." Am. Compl. ¶ 26. However, this excessive force claim is never mentioned again. Inherent in any excessive force claim under the Fourth Amendment is a requirement that the plaintiff's injury "resulted directly and only from a use of force." *Stephenson v. McClelland*, 632 F. App'x 177, 184 (5th Cir. 2015) (citation omitted). Here, Plaintiffs do not allege any facts showing that a use of force by Dallas County or its employees caused Decedent's death. Instead, Plaintiffs argue that it was a lack of force—not giving Decedent the attention and care he needed—that led to his death.

The facts under each count do not clarify the alleged constitutional violations either. In Count I, Plaintiffs appear to allege a violation of the Fourteenth Amendment right to due process and equal protection. *Id.* ¶ 45. Beyond this lone conclusory claim, claims of due process and equal protection do not appear again in the Amended Complaint. In Counts IV through X, Plaintiffs allege a violation of the Fourth Amendment due to a "conscious disregard for [Decedent's] medical and psychological needs." *Id.* ¶¶ 80, 93, 105, 121, 138, 155, 172. As explained above, a Fourth Amendment excessive force claim requires an allegation of force, not the omission of it. No other counts reference a particular constitutional amendment being violated. Taken as a whole, the Court cannot parse the precise constitutional violations being alleged given the lack of relevant factual allegations.

Even assuming Plaintiffs had clearly identified a constitutional basis for their claims, they do not plausibly allege causation or deliberate indifference. As to causation, Plaintiffs must establish a direct causal connection between the official policy and the resulting constitutional violation. *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992). This connection must be "more than a mere 'but for' coupling between cause and effect." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 387-90 (1989)). Here, Plaintiffs' allegation that Decedent suffered his injuries because of Brown and the Doe Defendants ignoring prison regulations amounts to little more than a coupling of cause and effect. *See* Am. Compl. ¶¶ 28-41. This is insufficient to plead causation.

As to deliberate indifference, Plaintiffs must allege facts showing that "1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; 2) the official actually drew that inference; and 3) the official's response indicates the official subjectively intended that harm occur." *Hartzog v. Hackett*, 711 F. App'x 235, 235-36 (5th Cir.

2018) (citation omitted). This standard is "extremely high." *Id.* at 235. Even accepting Plaintiffs'

inference that being aware of state regulations means that breaking them creates a risk of harm, it

is insufficient to allege deliberate indifference. Plaintiffs do not allege that any official drew this

inference or that their response indicates they subjectively intended the harm to occur. Rather, the

allegations raise the opposite inference. Plaintiffs do not allege that Dallas County did not monitor

Decedent, but rather that the monitoring was not "adequate[]" because it was not as often as

regulations dictate. Am. Compl. ¶¶ 35, 113-16, 132-33. Plaintiffs also allege that Decedent was

provided medical treatment after the incident. *Id.* ¶ 21. The fact that Dallas County monitored

Decedent in his cell and provided him with medical care does not support the inference that Dallas

County "subjectively intended that harm [to Decedent] occur." *Hartzog*, 711 F. App'x at 236

(citation omitted).

      Because Plaintiffs have not sufficiently pleaded that Dallas County had an official policy

from an identifiable policymaker with knowledge that was the moving force behind Decedent's

death, Plaintiffs' municipal liability claims against Dallas County fail.

### iii. Vicarious Liability

      Last, Dallas County contends that Counts IX and X—which claim that Dallas County is

vicariously liable for the actions of Brown and the Doe Defendants—are foreclosed because a

governmental entity may not be held liable under a theory of vicarious liability. County Mot. 17-

19. The Court agrees. "While municipalities can be sued directly under § 1983, *Monell* establishes

that they 'cannot be found liable on a theory of vicarious liability or respondeat superior.'" *Webb*

*v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) (quoting *Davidson v. City of Stafford*,

848 F.3d 384, 395 (5th Cir. 2017)). Instead, the liability "must be directly attributable to the

municipality through some sort of official act or imprimatur." *Id.* (quoting *Piotrowski*, 237 F.3d at

578). Because the Court has already held that Dallas County is not liable on the basis of an official act or imprimatur, there is no basis for vicarious liability.

*        *        *

For the reasons set forth above, the Court finds that Plaintiffs have not sufficiently pleaded municipal liability against Dallas County and that Dallas County is not subject to vicarious liability. Accordingly, the Court dismisses Counts VII, VIII, IX, and X. No claims remain against Dallas County.

### D. Brown's Motion

Brown raises three arguments in favor of dismissal. First, Niter lacks the capacity to assert survival-based claims. Second, Plaintiffs' claims against Brown in her official capacity are duplicative of Plaintiffs' claims against Dallas County. Third, Brown has qualified immunity for claims against her in her individual capacity. For the reasons explained above, the Court finds that Niter has the capacity to bring survival-based claims. As such, the Court declines Brown's request to dismiss Count II for lack of capacity. The Court focuses on Brown's remaining arguments.[9]

### i. Official Capacity Claims

Plaintiffs sue Brown in both her individual and official capacity as Sheriff of Dallas County. *See* Am. Compl. 1. Brown contends that any claims against her in her official capacity should be dismissed because suits against persons in their official capacity are treated as suits against the entity for which they work. Brown Mot. 6-7. Plaintiffs respond that there is no legal precedent for dismissing claims only because they are duplicative. Brown Resp. 10. The Court finds that any claims against Brown in her official capacity must be treated as claims against Dallas

---

[9] In the alternative, Brown moves to dismiss Plaintiffs' state law claims pursuant to Rule 12(b)(1) and/or Rule 12(b)(6). *See* Brown Mot. 15-19. Because the Court finds in Brown's favor on its principal bases for dismissal, it does not address these alternative grounds.

County. And because, for the reasons articulated above, Plaintiffs have failed to adequately plead their claims against Dallas County, the official capacity claims against Brown must also be dismissed.

"A suit against a county official in his official capacity is equivalent to a suit against the county; the official is only distinct when sued in his individual capacity." *Salazar v. Kleberg County*, No. 2:11-CV-00150, 2012 WL 1610542, at \*4 (S.D. Tex. May 8, 2012) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Graham*, 473 U.S. at 165-66; *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Because the suit against Brown in her official capacity is, "in essence, a suit against the municipality," the Court's analysis as to Dallas County "applies equally to [Brown] sued in [her] official capacity[y]." *Brumfield v. Hollins*, 551 F.3d 322, 331 n.9 (5th Cir. 2008) (citation omitted). Having already dismissed Plaintiffs' claims against Dallas County, the Court also dismisses any claims against Brown in her official capacity.[10]

### ii. Qualified Immunity

"Qualified immunity protects officers from suit unless their conduct violates a clearly established statutory or constitutional right." *Edmiston v. Borrego*, 75 F.4th 551, 558 (5th Cir. 2023) (cleaned up), *cert. denied sub nom. Crandel v. Hall*, 144 S. Ct. 1002 (2024). When an official asserts qualified immunity, the burden is on the plaintiff to demonstrate that the defendant is not entitled to qualified immunity. *Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023) (citation omitted). The plaintiff must plead facts sufficient to create the reasonable inference "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Edmiston*, 75 F.4th at 558 (citation omitted).

---

[10] The Court notes that it is not dismissing Plaintiffs' claims against Brown in her official capacity because they are duplicative, but rather because they are treated the same as the claims against Dallas County that the Court has already found to be deficient.

Brown contends that the claims against her in her individual capacity should be dismissed because she is entitled to qualified immunity. Specifically, Brown claims that Plaintiffs have not sufficiently pleaded that Brown was aware of facts supporting the inference that a substantial risk of harm existed and that she drew the inference, Brown Mot. 7-13, or that Brown was personally involved in the constitutional deprivation, *id.* at 13-15. Plaintiffs do not respond to the merits of Brown's arguments, instead noting that state jail regulations were not followed with regard to Decedent. Brown Resp. 11-12. The Court finds that Brown is entitled to qualified immunity.

Plaintiffs do not plausibly allege either element needed to overcome qualified immunity. As discussed above, Plaintiffs do not clearly allege that Decedent's constitutional rights were violated to satisfy the first element. Plaintiffs do not allege a use of force by Brown to support a Fourth Amendment claim. Nor do Plaintiffs plausibly plead a due process or equal protection claim against Brown. Plaintiffs allege that Brown violated Decedent's substantive due process under the Fourteenth Amendment due to punitive confinement. Am. Compl. ¶ 45. "[T]he Fourteenth Amendment prohibits the imposition of conditions of confinement on pretrial detainees that constitute punishment." *Ruiz v. El Paso Processing Ctr.*, 299 F. App'x 369, 371 (5th Cir. 2008) (alteration in original) (citation omitted). However, it is not sufficient to simply allege that a confinement is punitive. A plaintiff must allege facts showing that the detainee's conditions "are not reasonably related to a legitimate governmental purpose" or that the detainee's confinement has created "more than *de minimis* inconveniences." *Id.* (citations omitted). Plaintiffs allege no facts on either point. Therefore, they do not plausibly allege a due process claim against Brown.

Neither do Plaintiffs sufficiently plead facts to meet the second element. To meet the second element, it must be "sufficiently clear that every reasonable official would have understood that what he is doing violates [the alleged constitutional] right." *Edmiston*, 75 F.4th at 559 (citation

22

omitted). The allegation underpinning each of Plaintiffs' claims is that Defendants did not follow procedures meant to protect individuals "exhibit[ing] unusual mental health behavior" and with a "high risk of suicide." Am. Compl. ¶ 31. However, the Fifth Circuit "has acknowledged there is no independent constitutional right to suicide screening" and that "[n]o decision of [the Fifth Circuit] establishes a right to proper implementation of adequate suicide prevention protocols." *Edmiston*, 75 F.4th at 560 (quoting *Est. of Bonilla by & through Bonilla v. Orange County*, 982 F.3d 298, 307 (5th Cir. 2020)). Plaintiffs' allegations that Decedent was harmed by Brown and Dallas County not adhering to the state jail regulations designed to prevent suicide, then, do not relate to a clearly established constitutional right. Because there was no clearly established right, Brown could not have been on notice of it, and thus Plaintiffs do not meet their burden.

To the extent that Plaintiffs seek to hold Brown liable for the actions of her subordinates, those claims also fail. "Supervisory officials cannot be held liable under Section 1983 for the actions of subordinates on any theory of vicarious or *respondeat superior* liability." *Macias v. Salazar*, No. 21-51127, 2022 WL 3044654, at *2 (5th Cir. Aug. 2, 2022) (cleaned up). Brown can only be held liable in her individual capacity for her own participation in the alleged wrongdoing. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Plaintiffs make no allegations that Brown was at the jail when Decedent was there or that she was personally involved in decisions regarding his confinement. Brown cannot be held vicariously liable in her individual capacity under Section 1983 for the alleged actions of jail personnel and the Doe Defendants.

For the foregoing reasons, the Court finds that Plaintiffs have not pleaded sufficient facts to overcome qualified immunity and dismisses Counts I, II, and III. No claims remain against Brown.

## IV. CONCLUSION

For all the reasons stated above, the Court **DENIES** Defendant Texas Department of Public Safety's Renewed Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(5) [ECF No. 19] and **GRANTS** Defendant Dallas County's Motion to Dismiss [ECF No. 21], Defendant Dallas County Sheriff Marian Brown's Rule 12(b)(6) Motion to Dismiss [ECF No. 22], and Defendant Texas Department of Public Safety's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) [ECF No. 24].

The Court also **DISMISSES** Counts I to III and VII to XV of the First Amended Complaint [ECF No. 17]. The only remaining claims are against an indeterminate number of John/Jane Doe officers, as sued in their individual and official capacities. Plaintiffs have neither identified nor served the Doe Defendants with process since this suit was commenced on July 20, 2023. If Plaintiffs seek to identify and serve any individual officers, they must do so by **October 15, 2024**.

Finally, Plaintiffs must seek leave to file an amended complaint by **October 7, 2024**. If a motion for leave to file, with the proposed amended complaint attached, is not filed by this date, Plaintiffs' claims will be dismissed with prejudice.

**SO ORDERED.**

SIGNED September 25, 2024.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**